**In the United States District Court
for the District of Kansas**

---

Case No. 21-cv-01264-TC

---

DILLEN J. S.,[1]

*Plaintiff*

v.

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Dillen S. claims he is disabled and cannot work. *See* Doc. 11 at 1. He seeks review of a decision of the Commissioner of Social Security denying him supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. *Id.* at 1–2. For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 1383(c)(3) (referencing 42 U.S.C. § 405(g)). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813

---

[1] Plaintiff will be referred to only by first name followed by initials to protect his privacy. *See, e.g., Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

1

F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The ALJ's findings must also demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Finally, the ALJ must explain how "material inconsistencies and ambiguities in the evidence were considered and resolved." *Preston Lee R. v. Saul*, No. CV 20-1154-JWL, 2021 WL 1840057, at *4 (D. Kan. May 7, 2021) (citing SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2020)). Nevertheless, the legal standard on review is a deferential one. District courts do not reweigh the evidence or try the issues de novo. *Grogan v. Barnhart*, at 1262 (10th Cir. 2005).

**2.** To evaluate an application for SSI on the basis of disability, the Commissioner uses a five-step sequential analysis. 20 C.F.R. § 416.920(a)(4); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether the severity of any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). At step three, the severity of a mental impairment is evaluated under the "paragraph B" criteria. 20 C.F.R. Pt. 404, Subpt. P, App.1, 12.00A2b.

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. § 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* § 416.945(a)(1). The Commissioner determines

the claimant's RFC based on all relevant evidence in the record. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

After assessing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work considering his or her RFC. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). If suitable work exists in "significant numbers," the claimant's application for supplemental security income is rejected.

**B**

Plaintiff applied for SSI in 2018. Adm. Rec. 29.[2] The ALJ reviewed Plaintiff's disability claim according to the applicable five-step analysis detailed in 20 C.F.R. § 416.920.[3] Adm. Rec. 41–48. The ALJ found at step one that Plaintiff had not been employed in "substantial gainful activity" since June 26, 2018, the alleged onset date of Plaintiff's disability. *Id.* at. 33. At step two, the ALJ found Plaintiff had the following severe impairments prior to turning 18 and that they persisted into adulthood: poor vision of the left eye, attention deficit hyperactivity disorder (ADHD) with developmental delay, autism spectrum disorder, and learning disorder. *Id.* at 33, 41. At the third step, the ALJ determined that none of Plaintiffs' impairments alone or in combination "met or medically equaled the severity of one of the listed impairments" in the Listing of Impairments, based partly on the "paragraph B" criteria. Adm Rec. 41–43. Citing medical

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.), where citations point to Adm. Rec. pagination.

[3] Plaintiff was an adolescent during part of the relevant period for which he sought SSI, and the ALJ evaluated that portion of the claim under a separate three-step sequential analysis under 20 C.F.R. § 416.924(a) that applies to adolescent claimants. Adm. Rec. 29–31, 33–41. No part of Plaintiff's appeal pertains to that period, so that three-step analysis is not discussed further.

reports in the record, the ALJ determined that Plaintiff had moderate limitations in all four broad categories, including limitations in "interacting with others" and "concentrating, persisting, or maintaining pace." Adm. Rec. at 42.

Regarding interacting with others, the ALJ recognized Plaintiff's own testimony that he "has trouble with being around others" and "avoids crowded places." Adm. Rec. at 42. The ALJ then reviewed assessments from treatment providers: Dr. Gary Porter noted that Plaintiff "exhibited speech that was normal in quality, rate, and amplitude" and Dr. Scott Stegman noted that Plaintiff "exhibited a 'very friendly' demeanor, together with good eye contact." *Id.* The ALJ also observed Stegman's note that Plaintiff "exhibited a body odor" and at times "ha[d] difficulty with eye contact, consistent with his diagnosed autism." *Id.*

Turning to Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ recognized Plaintiff's self-reported "trouble with maintaining concentration and focusing on tasks." Adm. Rec. at 42. The ALJ further noted that Porter rated Plaintiff's ability to concentrate as "fair" and Stegman noted that Plaintiff "exhibited a 'tangential' thought process." *Id.* Stegman further noted, however, that Plaintiff "completed five out of five math problems successfully" and "was able to complete a multi-step command." *Id.*

The ALJ then assessed Plaintiff's RFC given the noted impairments. Adm. Rec. at 43–47. Based on the record evidence, the ALJ found that Plaintiff had the following mental RFC:

> The claimant can understand and remember simple instructions and can carry out simple, routine, repetitive tasks with normal breaks that are not performed in tandem or in groups and that can be learned by short demonstration in one month or less. The individual may not perform fast-paced assembly line type of work, but can meet productions requirements set by others that allow the individual to sustain a flexible and goal oriented pace. The individual can have occasional interaction with co-workers and supervisors but may not interact with the general public. The claimant can make simple work related decisions.

4

Adm. Rec. at 43. In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p" and further "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." Adm. Rec. at 43.

The ALJ considered first the severity of Plaintiff's reported symptoms. The ALJ explained how statements about the severity of Plaintiff's symptoms would be evaluated according to SSR 16-3p, which requires considering the objective medical evidence, statements of the claimant and others, and additional factors including the claimant's activities of daily living, "the type, dosage, effectiveness, and side effects of medications taken to alleviate" symptoms, and the availability of other treatments. *Id.* at 43–44. Based on that framework, the ALJ determined that Plaintiff's symptoms were not as severe as he reported. Adm. Rec. at 44. The ALJ recognized that Plaintiff testified that he is "not able to sustain the mental demands of work" or "respond appropriately to criticism and would get angry and frustrated," "has trouble making decisions," has "trouble with reading comprehension and could not pay attention for two hours," and that "stress would cause him to experience angry outbursts." *Id.* Yet, after considering the medical evidence, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent" with other evidence in the record. *Id.*

After determining the severity of Plaintiff's reported symptoms and comparing them to Plaintiff's testimony, the ALJ considered the record medical evidence. As required by the legal standard on appeal, the ALJ assessed the persuasiveness of each medical source pertaining to Plaintiff's mental impairments. The ALJ found that the opinions of the state agency psychological consultants, Dr. Lauren Cohen and Dr. Robert Cottone, were "generally persuasive because the opinions are explained." Adm. Rec. at 46. Cohen and Cottone found that Plaintiff was not significantly limited concerning understanding and memory limitations except for a moderate limitation in his ability to understand and remember detailed instructions. Adm. Rec. at 106–107, 127–28. Concerning "sustained concentration and persistence limitations," both Cohen and Cottone agreed that Plaintiff was not significantly limited in carrying out "instructions" both "short and

5

simple" and "detailed," performing "activities within a schedule" with "regular attendance," sustaining "an ordinary routine without special supervision," or making "simple work-related decisions." *Id.* at 107, 127. Both agreed that Plaintiff was moderately limited in "maintain[ing] attention and concentration for extended periods" and "work[ing] in coordination with or in proximity to others without being distracted by them." *Id.* Cohen found that Plaintiff was not significantly limited in his ability to "complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 107. Cottone found that Plaintiff was moderately limited in that ability. *Id.* at 127.

Finally, in relation to limitations on social interaction, Cohen and Cottone agreed that Plaintiff was limited in his ability to "interact appropriately with the general public" and moderately limited in his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Adm. Rec. at 108, 128–29. Both also found that Plaintiff was not significantly limited in the ability to "ask simple questions or request assistance" or "maintain socially appropriate behavior and adhere[nce] to basic standards of neatness and cleanliness." *Id.* at 108, 129. Cohen opined that Plaintiff was not significantly limited in his ability to "accept instructions and respond appropriately to criticism from supervisors," *id.* at 108, while Cottone found that he was moderately limited, *id.* at 129. Still, both stated in their narrative that there was "nothing to indicate that [Plaintiff] could not respond appropriately to supervision." *Id.* at 108, 129. Neither found that Plaintiff had adaptation limitations. *Id.*

Despite finding Cohen and Cottone's opinions generally persuasive, the ALJ explained some departures from their opinions in the submitted RFC. The ALJ found that Plaintiff had moderate limitations, rather than none, in adapting or managing himself based on evidence that Plaintiff had "difficulty in regulating himself when exposed to stress." Adm. Rec. at 108, 129. The ALJ addressed this limitation by limiting Plaintiff to "performance of simple, routine tasks with simple instructions, not having to perform fast-paced tasks, no tandem or group tasks, no customer service interaction, and only having to make simple work-related decisions." *Id.* And although Cohen and Cottone found that Plaintiff could complete "3 to 4 step instructions and tasks," the ALJ found the record evidence for that assessment was lacking. *Id.* Finally, the ALJ disagreed that Plaintiff

6

could not interact with the public in any capacity based on his ability "to interact with his medical providers and others," so the ALJ proposed a narrower limitation that Plaintiff "not provid[e] customer service to the public." Adm. Rec. at 108, 129.

The ALJ also found the opinion of Dr. Stegman, who performed a mental status exam of Plaintiff, generally persuasive. Stegman recorded in his report that Plaintiff was "very friendly throughout the session[,] appeared open throughout the interview . . . and was alert throughout the process of testing." Adm. Rec. at 532. During testing, Plaintiff correctly answered five out of five math problems and correctly completed both two-step and multi-step commands. *Id.* at 533. Stegman concluded that Plaintiff had "the ability to follow simple and complex instructions in session." *Id.* at 534. Although Plaintiff reported that he had both Autism Spectrum Disorder and ADHD, Stegman did not observe symptoms of ADHD during the session. *Id.*

The ALJ found the opinion of Plaintiff's treatment provider, Dr. Gary Porter, persuasive in part. Porter reported that Plaintiff had moderate limitations in social interaction and adaptation, which the ALJ found consistent with the record evidence. Adm. Rec. at 47. Specifically, Porter found that Plaintiff was moderately limited in the following categories: "[A]bility to interact appropriately with the general public"; "[A]bility to ask simple questions or request assistance"; "[A]bility to accept instructions and respond appropriately to criticism from supervisors"; "[A]bility to get along with coworkers or peers without distracting them or exhibiting behavior extremes"; and "[A]bility to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Adm. Rec. at 553. The ALJ explained that the RFC assessment accounted for these limitations. *Id.* at 47.

The ALJ was not persuaded, however, by Porter's opinion that Plaintiff had marked to extreme limitations in functioning, staying on task, and repeated absences. Adm. Rec. at 47. Porter reported that Plaintiff would have to "leave work prematurely or be absent" four days per month. *Id.* at 552. He further opined that Plaintiff would likely be off task to the point of "interfere[ing] with attention . . . [and] needed to perform [only] simple tasks" twenty percent of the time. *Id.* The ALJ explained that Porter's limitations on attendance and attention were not supported by the evidence. *Id.*

7

The ALJ found the remaining two medical sources unpersuasive. The ALJ found Kristina Naillieux's opinion unpersuasive because Naillieux, a licensed family therapist, offered little in the way of explanation for her stated opinions. Adm. Rec. at 47. Moreover, the marked and extreme limitations that Naillieux found in every category of functioning, *id.* at 555–56, were inconsistent with Stegman's persuasive mental exam, *id.* at 47. Likewise, the ALJ found Naillieux's opinion that Plaintiff would frequently miss work and be off task 25 percent or more of the time inconsistent with the record evidence. *Id.* at 47.

The ALJ also found Alyssa Porter's opinion unpersuasive "because the limitations therein are not quantified." Adm. Rec. at 46. The ALJ thought Porter, a licensed social worker, did not address the range of Plaintiff's limitations, offering only an isolated conclusion that "that the claimant experiences limitations in mental functioning." *Id.* Likewise, Porter's opinion "appear[ed]" to apply different criteria than those specified by the Social Security Administration. *Id.* Indeed Porter's task was to assess whether Plaintiff met the criteria for a serious emotional disturbance rather than a disability per se. Adm. Rec. at 534.[4]

After determining Plaintiff's RFC, the ALJ turned to step four and determined that Plaintiff had no past relevant work. Adm. Rec. at 47. At step five, the ALJ heard testimony from a vocational expert. *Id.* at 48. The vocational expert testified, based on Plaintiff's age, education, work experience, and RFC, that Plaintiff would be able to perform jobs such as "marker (DOT 209.587-034), [Specific Vocational Preparation Level] 2, light, with 92,415 jobs in the national economy; hospital cleaner (DOT 323.687-010), SVP 2, medium, with 140,000 jobs in the national economy;" and "wafer breaker (DOT 726.687-046), SVP 2, sedentary, with 60,000 jobs in the national economy." *Id.*

Based on that testimony, the ALJ concluded that Plaintiff was not disabled. *Id.* After exhausting his administrative remedies before the Social Security Administration, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C § 405(g). Doc. 1.

---

[4] Hereafter, Porter refers to Dr. Garry Porter, rather than Alyssa Porter, unless otherwise specified.

## C

Plaintiff's claims of error address two limitations in the RFC assessment. The first limitation concerns concentrating for extended periods. Plaintiff argues that the ALJ should have included a "narrative explanation" of her decision to exclude limitations on concentration, since she found persuasive the reports that stated that Plaintiff had moderate limitations regarding concentration. Doc. 11 at 8–9, 13–14. So, Plaintiff contends the ALJ erroneously concluded that Plaintiff could work longer than the state agency consultants opined. *Id.* at 12.

The ALJ's alleged second error concerns Plaintiff's ability to respond appropriately to others. Like the first limitation, Plaintiff argues that the ALJ failed to explain why the RFC did not include a limitation on Plaintiff's ability to interact appropriately with others after finding persuasive Dr. Gary Porter's finding of moderate limitations in social interaction. Doc. 11 at 8–9, 12. Plaintiff argues that the ALJ's conclusion that Plaintiff could perform work in excess of that limitation was error. *Id.* at 12. If the ALJ excluded these limitations (i) because she failed to consider all relevant medical evidence, *see Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005), or (ii) without any adequate evidence that would lead a reasonable mind to exclude them, *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), reversal and remand are appropriate.

The Commissioner disagrees that the ALJ failed to include interaction and concentration limits in the RFC assessment. Rather, in the view of the Commissioner, the ALJ incorporated the state agency consultants' moderate limitation findings by limiting Plaintiff to unskilled work. According to the Commissioner, the ALJ incorporated Dr. Gary Porter's assessment that Plaintiff had moderate limitations on social interaction by limiting Plaintiff to only occasional interaction with coworkers and supervisors and no interaction with the general public. Thus, the question on appeal is essentially factual: did the ALJ incorporate the two limitations that Plaintiff claims were erroneously excluded? If so, the decision of the ALJ should be affirmed.

## II

The ALJ did not omit either limitation. The RFC assessment accounts for moderate limitations in extended concentration and inter-

acting appropriately with others. The decision of the Commissioner is therefore affirmed.

## A

The RFC addressed Plaintiff's impaired ability to concentrate by limiting him to work involving only "simple work related decisions," "simple, routine, repetitive tasks," and a "flexible, goal oriented pace." Adm. Rec. at 48. Plaintiff argues that was error because the ALJ was not permitted to use a skills-based limitation to address his moderate limitation in concentration. Doc. 11 at 14 (citing *D.M. v. Comm'r of Soc. Sec. Admin.*, No. 19-1146, 2019 WL 6327585 (D. Kan. Nov. 26, 2019)).

It is permissible, under certain circumstances, for an ALJ to impose a limitation to unskilled work as a means of addressing a plaintiff's nonexertional (i.e., cognitive rather than physical) limitations. While a limitation to unskilled work cannot address all nonexertional limitations, *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012), it may be used as a shorthand to address moderate limitations in concentration, persistence, and pace. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). When used to that end, the ALJ must identify specific evidence demonstrating that the claimant "can satisfy the demands of unskilled work with [his or] her mental limitations." *Carr v. Comm'r, SSA*, 734 F. App'x 606, 611–12 (10th Cir. 2018). Moreover, the ALJ must formulate the limitations in the RFC assessment "in terms of work-related functions" or "[w]ork-related mental activities," not as a degree of mental functioning. *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014); *see also Shelton v. Colvin*, 663 F. App'x 690, 695 (10th Cir. 2016) (finding that a limitation to "one to two step tasks" accounted for moderate difficulties with concentration, persistence, and pace); *Vigil*, 805 F.3d at 1203 (finding an express limitation to Specific Vocational Preparation 1- or 2-level jobs accounted for moderate concentration, persistence, and pace problems).

Plaintiff relies on the non-binding decision in *D.M.* There, the ALJ addressed a moderate limitation in concentration by stating that the claimant was only "able to understand, remember, and carry out simple instructions and perform simple, routine tasks." *D.M.*, 2019 WL 6327585, at *4. The district court held that the ALJ's limitation "did not explicitly restrict plaintiff to 'unskilled work'" and "appear[ed] less restricting [than the record suggested] without adequate

10

explanation." *Id.* at \*6. The district court recognized that an ALJ may express a limitation in terms of skill level, but held that there must be specific findings and the limitation must be stated "in terms of work-related mental activities." *Id.* at 4–6 (finding a limitation inadequate given medical testimony that detailed "minimal" ability to tolerate stress and serious memory problems).

As in *D.M.*, it appears that the ALJ did not explicitly limit Plaintiff to unskilled work. However, in this case, the ALJ found no evidence of "minimal" ability to tolerate stress or serious memory issues. Instead, the ALJ found that Plaintiff's testimony was not aligned with the medical evidence. Adm. Rec. at 44. In such a case, it is permissible for an ALJ to address a Plaintiff's moderate limitation in concentration by (i) pointing to record evidence that Plaintiff could complete the concentration requirements of specified jobs and (ii) expressly limiting Plaintiff to such jobs. *Vigil*, 805 F.3d at 1203–04. In this case, the ALJ provided findings to support her conclusion that Plaintiff could follow simple instructions. She pointed first to Dr. Gary Porter's opinion that Plaintiff "could perform simple, clear cut tasks." Adm. Rec. at 47. The ALJ then relied on Porter's opinion that Plaintiff's ability to concentrate was "fair" and Stegman's note that, despite a "'tangential' thought process," Plaintiff completed five out of five math problems successfully and a multi-step command. *Id.* at 42.

Although the RFC formulation did not expressly limit Plaintiff to unskilled jobs, all of the jobs the vocational expert identified were Specific Vocational Preparation level 2 jobs that fit the definition of unskilled. Adm. Rec. at 84–85. The ALJ found, on the record, that Plaintiff could complete simple tasks and Plaintiff was ultimately limited to jobs in the unskilled SVP 2 category. *See Vigil*, 805 F.3d at 1204 (defining unskilled jobs as "work generally requir[ing] only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions . . ."). It is therefore harmless error that the ALJ did not use the precise phrase "unskilled work" when limiting Plaintiff to specific positions that fall within the unskilled category, namely jobs requiring only understanding, remembering, and carrying out simple instructions, a faculty Plaintiff possessed on the ALJ's reading of the medical evidence.

Moreover, the ALJ explicitly addressed Plaintiff's ability to pay attention for extended periods. *Contra* Doc. 11 at 15. The ALJ explained that the evidence did not support that Plaintiff was unable to

11

maintain work with normal breaks. Adm. Rec. at 46. Of course, Cohen and Cottone did find that Plaintiff "may have some difficulty with work requiring sustained attention over long periods of time." Adm. Rec. at 107, 127–28. And the vocational expert opined that there would be no work for someone who could not pay attention during two hours of work between scheduled breaks. *Id.* at 86–88. But the ALJ addressed Cohen's and Cottone's opinions and specifically rejected the contention that Plaintiff could not perform simple routine work with normal breaks based on Stegman's findings regarding Plaintiff's full-scale IQ score and overall level of functioning. Adm. Rec. at 46 (citing *id.* at 531–542). Similarly, based on Stegman's report, the ALJ rejected Porter's opinion that Plaintiff would be "absent 4 days each month" or "off task 20 percent of the time." *Id.* at 47. Thus, the ALJ did not fail to "resolve ambiguities [or] material inconsistencies in the evidence" or fail to explain why she "did not adopt a medical opinion which conflicts with the RFC [the ALJ] assessed." SSR 96-8p. An explained rejection of some medical opinions in favor of others within the record, without more, is not grounds for reversal.

**B**

Plaintiff next argues that the ALJ failed to incorporate a moderate limitation in interacting appropriately with others or explain why the ALJ chose to omit that limitation after finding persuasive Porter's opinion that Plaintiff had moderate limitations in social interaction. *See* Adm. Rec. at 546–53 (describing Plaintiff's perception as "normal," memory as "intact," intelligence as "fair," and concentration as "poor" leading to issues with social interaction). Plaintiff is incorrect.

The ALJ properly addressed Plaintiff's moderate limitation in socially appropriate behavior in the RFC. Specifically, the ALJ limited Plaintiff to occasional interaction with coworkers and supervisors and provided for no interaction with the general public. Adm. Rec. at 43. Numerous courts have concluded that limiting a claimant to occasional interaction with others is sufficient to address moderate limitations in socially appropriate behavior. *E.g.*, *Washington v. Soc. Sec. Admin.*, 503 F. App'x 881, 883 (11th Cir. 2013) (holding that the ALJ accounted for plaintiff's moderate limitations in social functioning by limiting plaintiff to jobs that involved "only occasional interaction with the general public and coworkers"); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (finding that the ALJ accounted for plaintiff's moderate limitation in social functioning by restricting her

to "brief and superficial contact with others"); *Veronica B. v. Kijakazi*, No. 3:29-cv-6950, 2022 WL 131136, at *6 (D.N.J. Jan. 14, 2022); *Nathan P. v. Comm'r of Soc. Sec.*, No. 19-CV-954Sr, 2021 WL 1139849, at *5–6 (W.D.N.Y. Mar. 25, 2021); *Crumley v. Comm'r of Soc. Sec.*, No. 3:17-cv-973, 2019 WL 1417320, at *4–5 (M.D. Fla. Mar. 29, 2019); *Hyer v. Colvin*, No. 15-297, 2016 WL 5719683, at *12 (D. Del. Sept. 29, 2016) (collecting cases).

The ALJ's RFC assessment adequately addressed all of Plaintiff's moderate limitations on appropriate social interaction. It limited Plaintiff to only occasional interactions with others, specifically co-workers and supervisors, and provided for no interaction with the public. Porter's opinion found Plaintiff had moderate limitations in his abilities to "interact appropriately with the public," "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "maintain socially appropriate behavior and adhere[nce] to basic standards of neatness and cleanliness." Adm. Rec. at 553. The RFC assessment accordingly limited Plaintiff in the relevant social categories: "The individual can have occasional interaction with co-workers and supervisors but may not interact with the general public." *Id.* at 43. Each of these limitations adequately accounted for Plaintiff's moderate limitations on interacting appropriately with others. *Contra* Doc. 11 at 8–9.

Plaintiff argues that failure to include an express limitation on accepting criticism from supervisors was error because the vocational expert opined that there would not be work "for an individual who had a 30% reduction in the ability to respond appropriately to criticism from supervisors." Doc. 11 at 20. But that is not the complete picture. The hypothetical that prompted the vocational expert's estimation involved an individual whose ability to accept criticism from a supervisor would be diminished by 30 percent, *and* that "the inappropriate response," from said individual "would be anger toward the supervisor." Adm. Rec. at 89. In response, the vocational expert did not say that there would be no competitive work available, only that the first outburst would put the individual in line for termination. *Id.* To be sure, Porter's report suggests that Plaintiff's moderate social limitations diminish his ability to act appropriately by 30 percent, *id.* at 552–53, but the ALJ stated that Plaintiff's testimony that he would get angry or frustrated in response to any criticism was not consistent with the medical evidence, *id.* at 44. In particular, the ALJ identified

13

Porter's medical notes that Plaintiff "exhibited speech that was normal in quality, rate, and amplitude," and Stegman's report that Plaintiff "exhibited a 'very friendly' demeanor, together with good eye contact," as evidence that anger would not be Plaintiff's default response to criticism from supervisors. *Id.* at 42. Plaintiff argues that such behavior was limited to medical appointments only, Doc. 11 at 11, but it was not inherently unreasonable or "materially inconsistent" for the ALJ to conclude from Stegman's or Porter's opinions that such behavior is generalizable as neither opinion includes the caveat Plaintiff asserts. *See* Adm. Rec. at 537 (Stegman's opinion) and Adm. Rec. at 552–53 (Porter's opinion). At base, Plaintiff has not shown how the ALJ's limitation in the RFC assessment to occasional interactions with supervisors failed to account for Plaintiff's moderate limitation in responding appropriately to criticism from supervisors.

### III

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

It is so ordered.

Date: September 6, 2023    s/ Toby Crouse
                           Toby Crouse
                           United States District Judge